UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
UNITED STATES OF AMERICA,

                     **MEMORANDUM & ORDER**

-against-

                     13-CR-612 (ENV)

MALAK NESEEM SWARES BOULOS and
AMGED KAMEL YONAN TAWDRAUS,

              Defendants.
-----------------------------------------------------------X

VITALIANO, D.J.

Defendants Malak Neseem Swares Boulos and Amged Kamel Yonan Tawdraus stand charged by indictment with conspiring to violate the Arms Export Control Act, 22 U.S.C. § 2778 ("AECA"), and attempted violation of the AECA. The charges arise from an alleged scheme to export various munitions parts and weapons components from the United State to Egypt, without first obtaining the authorizations required by the International Traffic in Arms Regulations, Title 22, C.F.R. Parts 120 *et seq.* ("ITAR"). Before the Court now is the government's motion, pursuant to the Classified Information Procedures Act ("CIPA"), 18 U.S.C. App. 3 §§ 1-16, and Fed. R. Crim. P. 16(d)(1), for a protective order. The government seeks, in line with CIPA § 4, to be relieved from its ordinary disclosure obligations as they relate to certain classified materials obtained during the government's investigation. Given the nature of the application, the government's submission was filed *ex parte* and under seal. For the reasons that follow, the government's motion is granted, and this protective order

1

issues.

## CIPA's Legal Framework

"CIPA establishes rules for the management of criminal cases involving classified information." In re Terrorist Bombings of U.S. Embassies in E. Africa, 552 F.3d 93, 115 (2d Cir. 2008). "Its animating purpose is to harmonize a [criminal] defendant's right to obtain and present exculpatory material with the government's need to withhold information from discovery when disclosure would be inimical to national security." Id. at 115-16.

Section 4 of CIPA "provides that, if the discovery to be provided to the defense pursuant to the Federal Rules of Criminal Procedure includes classified information, the district court may, 'upon a sufficient showing, . . . authorize the United States to delete specified items of classified information[,] . . . to substitute a summary of the information[,] . . . or to substitute a statement admitting relevant facts that the classified information would tend to prove.'" Id. at 116; see also 18 U.S.C. App. 3 § 4. "This provision clarifies district courts' power under Federal Rule of Criminal Procedure 16(d)(1) to issue protective orders denying or restricting discovery for good cause." United States v. Aref, 533 F.3d 72, 78 (2d Cir. 2008).

CIPA's framework for nondisclosure provides a means for applying the state-secrets privilege to classified information which, in ordinary circumstances, would be discoverable. Id. at 78-79. Proper application of that privilege requires balancing of the government's need to protect national security with the right of a defendant to mount a full defense. In balancing these competing objectives, "the district court must

2

first decide whether the classified information the Government possesses is discoverable." Id. at 80.[1] "If it is, the district court must then determine whether the state-secrets privilege applies." Aref, 533 F.3d at 80. A determination that it does must rest on a finding that "(1) there is a reasonable danger that compulsion of the evidence will expose . . . matters which, in the interest of national security, should not be divulged, and (2) the privilege is lodged by the head of the department which has control over the matter, after actual personal consideration by that officer." Id. Finally, the district court must then determine whether the information would be "helpful or material to the defense, i.e., useful to 'counter the government's case or to bolster a defense.'" Id. (quoting United States v. Stevens, 985 F.2d 1175 (2d Cir. 1993). "To be helpful or material to the defense, evidence need not rise to the level that would trigger the Government's obligation under Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194 (1963), to disclose exculpatory information. Information can be helpful without being 'favorable' in the Brady sense." Aref, 533 F.3d at 80 (internal citations and quotations omitted).

Of course, where the classified materials contain matter that is exculpatory or helpful to the defense, the government's privilege must "give way" to a "defendant's

---

[1] CIPA defines "classified information" as "information or material that has been determined by the United States Government pursuant to an Executive order, statute, or regulation, to require protection against unauthorized disclosure for reasons of national security." 18 U.S.C. App. 3 § 1(a). The government's submission in this case contains declarations by the appropriate government officials "adequately describ[ing] the reasons for the information's classification and the harm that would result from disclosure." United States v. Juma Khan, No. 08 CR. 621 (NRB), 2010 WL 330241, at *1 (S.D.N.Y. Jan. 20, 2010). This is sufficient to place the information at issue within CIPA's ambit as CIPA recognizes classification as "an executive decision, one that courts are ill-suited to second-guess." United States v. Zazi, No. 10-CR-60 (JG), 2011 WL 2532903, at *2 n.3 (E.D.N.Y. June 24, 2011).

3

right to present a meaningful defense." United States v. Abu-Jihaad, 630 F.3d 102, 141 (2d Cir. 2010) (quotations omitted). A court, however, may permit the government to produce that information in a form that will preserve its sensitivity (e.g., redacted, summaries, factual stipulations). See Zazi, 2011 WL 2532903, at *4; Khan, 2010 WL 330241, at *2; see also 18 U.S.C. App. 3 §§ 4, 6.

## Discussion

The government's submission here, which was appropriately filed *ex parte* and under seal, see Abu-Jihaad, 630 F.3d at 143 ("in such circumstances, a district court's decision to conduct *ex parte* hearings manifests no abuse of discretion."), describes in detail the classified material it seeks to withhold from disclosure.[2] Though the Court's "discussion of the classified information is necessarily circumspect," Abu-Jihaad, 630 F.3d at 141; Zazi, 2011 WL 2532903, at *1, it reviewed, in detail, all of the materials that were submitted. Upon that intense review, the Court is confident that the government undertook a "generous approach to determining whether material could be considered exculpatory or impeaching," Zazi, 2011 WL 2532905, at *4, or defense bolstering, Aref, 533 F.3d at 80, and conducted a diligent and thorough search for all potentially discoverable material. With its review of the described materials in hand, the Court agrees with the government's assessment that at least some of the classified material is arguably discoverable.

---

[2] The government has made the original source materials available for the Court's inspection upon its request. Since the government's memorandum of law, which includes detailed descriptions of these materials and relevant excerpts and summaries, amply demonstrates that these materials do not contain information that is either exculpatory or otherwise helpful to the defense, examining these classified source materials was neither required nor necessary. See Zazi, 2011 WL 2532905, at *5.

The Court also finds that the state-secrets privilege has been properly invoked. Upon review of the government's showing, it is beyond dispute that there is a real and palpable danger that compelled production of the evidence to be withheld "will expose ... matters which, in the interest of national security, should not be divulged." Aref, 533 F.3d at 80 (internal quotation marks omitted). Additionally, the government's submission includes declarations by each appropriate "head of the department which has control over the matter, after actual personal consideration by the officer," properly asserting the privilege. Id. at 80; Zazi, 2011 WL 2532903, at *4.

Upon its showing, then, the government seeks to completely withhold the subject materials, contending that they are not exculpatory or otherwise helpful to the defense. The Court agrees. Indeed, after careful consideration, the Court cannot conceive of any circumstance in which the classified materials the government asks be withheld would be helpful to the defense. It is quite clear that neither Boulos nor Tawdraus could "use the withheld material 'to bolster his defense or to counter the government's case,' nor would the information aid counsel" in pursuing an effective defense. Zazi, 2011 WL 2532903, at *4 (quoting United States v. Stevens, 985 F.2d 1175, 1180 (2d Cir. 1993)). To the contrary, the classified materials actually tend to inculpate Boulos and Tawdraus in the charged crimes. In any event, much of the material to be withheld is duplicative of information set forth in materials produced to Boulos and Tawdraus in discovery and that they already possess, meaning that there is no prejudice in withholding the subject classified materials. See United States v. Abu Jihaad, No. 07-CR-57 (MRK), 2008 WL 346121, at *5 (D. Conn. Feb. 4, 2008). Plainly and simply,

since the substantive material information that the classified evidence might convey has already been produced to defendants in another form, and is not helpful to the defense in any case, the classified materials that are the subject of this motion are properly withheld in their entirety from production to defendants and their counsel.

## Conclusion

Accordingly, for the reasons set forth above the government's motion to withhold certain classified information from discovery on the ground that the information is neither exculpatory or otherwise helpful to the defense is granted. It is further ordered that the government's entire submission in support of this motion, including the underlying classified materials, shall remain sealed and preserved by the Classified Information Security Officer, to be made available to an appellate court in the event of an appeal.

Dated: Brooklyn, New York
February 3, 2015

/s/ USDJ VITALIANO
ERIC N. VITALIANO
United States District Judge